RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0346p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

BRIDGETT HANDY-CLAY,
                  *Plaintiff-Appellant,*

v.

CITY OF MEMPHIS, TENNESSEE; MAYOR A C
WHARTON, in his official capacity; HERMAN
MORRIS, JR., individually and in his official
capacity as City Attorney; CATHY PORTER,
individually and in her official capacity as
Senior Legal Administrator,
                  *Defendants-Appellees.*

No. 11-5518

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:10-cv-2927—S. Thomas Anderson, District Judge.

Argued: May 29, 2012

Decided and Filed: September 25, 2012

Before: DAUGHTREY and CLAY, Circuit Judges; CLELAND, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Carol J. Chumney, CAROL CHUMNEY LAW PLLC, Memphis, Tennessee, for Appellant. Elijah Noel, Jr., HARRIS, SHELTON, HANOVER WALSH, PLLC, Memphis, Tennessee, for Appellees. **ON BRIEF:** Carol J. Chumney, CAROL CHUMNEY LAW PLLC, Memphis, Tennessee, for Appellant. Elijah Noel, Jr., Laura Martin, HARRIS, SHELTON, HANOVER WALSH, PLLC, Memphis, Tennessee, J. Michael Fletcher, Memphis, Tennessee, Donald A. Donati, William B. Ryan, Bryce W. Ashby, DONATI LAW FIRM, LLP, Memphis, Tennessee, for Appellees.

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

## OPINION

MARTHA CRAIG DAUGHTREY, Circuit Judge. Plaintiff Bridgett Handy-Clay filed this civil rights action under 42 U.S.C. § 1983, charging that the defendants unlawfully terminated her from her position in the Memphis City Attorney's Office in retaliation for her allegations about corruption and mismanagement of public funds in that office. The district court dismissed Handy-Clay's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. She now appeals, contending that in dismissing her claims the district court failed to construe the allegations in the complaint in the light most favorable to her. We conclude that the district court erred in dismissing Handy-Clay's First Amendment retaliation claim. However, we agree that Handy-Clay did not allege sufficient facts to support her other § 1983 claim, alleging a denial of due process. As a result, we affirm the district court's judgment in part, reverse in part, and remand the case for further proceedings.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Because we are reviewing the district court's order of dismissal under Rule 12(b)(6), we accept as true the facts set out in the complaint. Those facts allege that in July 2007, Bridgett Handy-Clay was appointed by Mayor W. W. Herenton as the public records coordinator for the City of Memphis. Pursuant to the City's Charter and the Code of Ordinances, the public records coordinator was classified as an exempt employee, working out of the City Attorney's Office. Handy-Clay's duties included, among others, ensuring that record requests from the public were "routed to the appropriate records custodian and responded to in a timely manner," reviewing the documents released to "prevent[ ] the disclosure of confidential information," and supporting the recording and transcription of the minutes of the Memphis Charter Commission.

The volume of public-record requests increased substantially after Handy-Clay accepted the position, and they continued to increase throughout her tenure, due at least in part to an ongoing FBI investigation into the awarding of city contracts. Initially, Handy-Clay met with City Attorney Elbert Jefferson to process the requests, but Jefferson's administrative assistant, defendant Cathy Porter, began to manipulate Handy-Clay's meetings with Jefferson, and ultimately Handy-Clay began submitting the requests directly to Porter, who would then bring them to Jefferson's attention. Eventually, Porter restructured the office organizational chart so that she had direct supervision over Handy-Clay.

As a result of the change in protocol, Handy-Clay alleged, she began receiving complaints regarding delay from the local daily newspaper and other would-be recipients. According to the complaint, Porter would frequently route requested records through another employee, preventing Handy-Clay from undertaking the review required by her position and, in some cases, altogether failing to produce requested records. In sum, Handy-Clay's efforts to comply with requests for public records were thwarted by "delays in response from various division directors, delays in response from the City Attorney, denial of access to meet with the City Attorney by Porter, and even delays in simple requests for office supplies and a place for the public to review the documents." She asserted that there was an entrenched culture at City Hall that led to the concealment of information from the public and disclosure of only the "bare minimum needed to comply with any given public records requests."

Handy-Clay was also concerned with the conduct of various other employees in the City Attorney's Office. For example, she alleged that there was a "general practice of some employees violating city policies by not reporting absences from the office" that amounted to "abuse of city leave and payment policies," as well as the improper use of city funds. Also, she was informed that she was not entitled to overtime pay, but she became aware that other employees received compensation for overtime work. Moreover, she alleged, there were "issues regarding nepotism and favoritism based upon personal relationships in the City Attorney's Office." As a result, Handy-Clay sought

No. 11-5518        *Handy-Clay v. City of Memphis, et al.*                              Page 4

to develop "across the board policies and procedures to regulate office protocol and avoid disparate treatment."

Handy-Clay repeatedly approached Jefferson regarding both her concerns about widescale resistance from city officials in producing records and about corruption and malfeasance in the City Attorney's Office. She also raised her concerns to Senior Legal Attorney Gerald Thornton, acting Deputy City Attorney Veronica Coleman-Davis, city payroll employee Julian Mabry, and Chief Administrative Officer George Little, through his assistant, Demar Roberts. Handy-Clay alleged that as a result of her reports, she suffered "continuing interference, retaliation, and disparate treatment."

On October 10, 2009, the newly-elected mayor, defendant A C Wharton, issued an executive order establishing standards of performance designed to produce a more transparent and open city government. On October 21, defendant Herman Morris was sworn in as the new City Attorney. The next day, Handy-Clay sent Morris an e-mail raising her concerns about the misuse of time by employees in the City Attorney's office, citing "misrepresentation of job functions and positions, among other things." Handy-Clay met with Morris five days later to discuss these issues but, she alleged in her complaint, Morris never took any action in response. Over the next year, she nevertheless continued to contact Morris regarding her suspicions. At some point, Handy-Clay alleged, she "became aware of emails that gave her reasonable cause to believe" that Morris himself was abusing city leave and pay policies. She communicated her concerns to city councilman Myron Lowery and Antonio Adams with the "City's EEOC office."

On August 26, 2010, Handy-Clay submitted two requests for records under the Tennessee Open Records Act, asking for "documents regarding vacation, sick and bonus time, time sheets, docked pay, personnel files, and payroll check requests for City Attorney's office employees, including City Attorney Morris." She sent the request by e-mail to Jill Madajczyk, a senior assistant in the City Attorney's Office, and copied Morris, Little, Bobby White, the Mayor's chief of staff, and Tonya Meeks, the Mayor's public relations staff member, on the e-mail. Madajczyk and Morris acknowledged

receipt of her message. That same day, Handy-Clay met with Meeks to discuss her records request and her complaints about the City Attorney's Office. The next day, August 27, Handy-Clay met with Human Resources employee Quinton Robinson and "reported the abuse of city leave policies," alleged that some employees were "'stealing' city time" by being paid for hours they did not work, and requested an investigation. She submitted a third records request the next day for payroll records of all City Attorney's Office employees and, again, sent copies of her requests to the same group of people.

Later that same day, August 27, 2010, Morris handed Handy-Clay a termination letter signed by Wharton. Three days later, on August 30, Little held a press conference and announced that Handy-Clay had been terminated for what Handy-Clay described in her complaint as "failure to adhere to unspecified polices and procedures" and an "alleged poor attendance and leave record." Little's comments appeared in various print and television media reports in the Memphis area.

Some four months later, on December 22, 2010, Handy-Clay filed the complaint in this case, asserting claims for violation of the Tennessee Public Protection Act, common-law retaliatory discharge and wrongful termination, tortious interference with at-will employment, breach of the duty of good faith and fair dealing, deprivation of constitutional rights in violation of 42 U.S.C. § 1983 under the First and Fourteenth Amendments, and violation of the Tennessee Governmental Tort Liability Act. The defendants responded with motions to dismiss.

The district court dismissed the § 1983 claims for failure to state a claim upon which relief could be granted and declined to exercise supplemental jurisdiction over the state-law claims, dismissing them without prejudice. With regard to the claim of retaliation in violation of the First Amendment, the district court found that the plaintiff had failed to plead with sufficient particularity that she had spoken as a private citizen addressing matters of public concern and not merely as an employee concerned with internal office issues. The court noted that Handy-Clay's complaints "addressed problems related to delay in complying with open records laws . . . undertaken in the

course of performing her job," and that "other problems she suffered in the workplace [were also] a direct result of carrying out her job duties." The district court further noted that "[a]lthough the fact that the employee's speech arises in the workplace is not dispositive, a public employee's complaints or concerns 'up the chain of command at his workplace about his job duties' amounts to speech 'undertaken in the course of performing his job.'" (Citation omitted) (Quoting *Burgess v. Paducah Area Transit Auth.*, 387 F. App'x 538, 545 (6th Cir. 2010)). Having determined that Handy-Clay's speech was not protected, the district court also commented on the "conclusory legal labels" used by the plaintiff in describing the retaliatory treatment she suffered: "continuing interference, retaliation, and disparate treatment." Such "general allegations," the court held, "fail to state a claim for First Amendment retaliation."

Turning to the plaintiff's due-process claim, the district court noted that the liberty interests guaranteed by the Fourteenth Amendment include an individual's interest in her reputation, good name, honor, and integrity, and that a public employee is entitled to an opportunity to clear her name if she can show that she has been stigmatized by the public dissemination of false information in connection with a decision to terminate her employment, citing *Burkhart v. Randles*, 764 F.2d 1196, 1201 (6th Cir. 1985). The district court then held that the plaintiff had failed to request a name-clearing hearing and had not pleaded any harm other than a statement alleging that she had been terminated for allegedly "improper or inadequate performance," which, the court held, was inadequate to state a due process claim.

Handy-Clay now appeals the dismissal of her § 1983 claims under Rule 12(b)(6).

## II. DISCUSSION

### A. Standard of Review

We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). We may affirm the district court's determination on any grounds, "including grounds not relied upon by the district court." *Hensley Mfg. v. ProPride,*

*Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008)).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." It will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must thus "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

In analyzing the sufficiency and plausibility of the claim, "we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). We will affirm the district court's dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) (citation and internal quotation marks omitted). We need not accept as true "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted), or an "unwarranted factual inference[ ]," *Treesh*, 487 F.3d at 476 (citation and internal quotation marks omitted).

## B. Section 1983 Claims

Handy-Clay's only cause of action under federal law is her claim against all defendants under 42 U.S.C. § 1983. There are two elements to a § 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)

(citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). The district court assumed that Handy-Clay had adequately alleged state action. The defendants do not contest this issue on appeal, and we also may assume that Handy-Clay met this requirement. *Id.* at 723 ("[I]t does not appear from the pleadings to be in dispute whether Defendant Hudson acted under color of state law, and so it will be assumed that Plaintiff sufficiently pled state action for purposes of evaluating the motion to dismiss."). The dispositive question then is whether Handy-Clay has stated any plausible claim that the defendants deprived her of her rights under the First and Fourteenth Amendments, "including but not limited to" her "right to free speech[ ] and liberty."

### 1. First Amendment Claim: Free Speech

Handy-Clay alleged that she suffered discrimination, harassment and, ultimately, termination of her employment in retaliation for the exercise of her constitutional right to free speech. Such claims have three elements. A § 1983 plaintiff must plead factual allegations sufficient to establish that "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Fritz*, 592 F.3d at 723 (citing *Mezibov*, 411 F.3d at 717).

### a. Constitutionally Protected Conduct

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citation omitted). However, public employees do not forfeit all their First Amendment rights simply because they are employed by the state or a municipality. *See id.* at 417; *see also Connick v. Myers*, 461 U.S. 138, 142 (1983) (noting that it is well established "that a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression" (citations omitted)). The Supreme Court has determined that the First Amendment protects a public employee's right, under certain circumstances, to speak as a citizen on matters of

public concern. *Garcetti*, 547 U.S. at 417. However, when a public employee speaks as an employee on matters of personal interest, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147 (citation omitted).

We note that these principles are meant to protect not only the constitutional rights of public employees but also "the public's interest in receiving the well-informed views of government employees engaging in civic discussion." *Garcetti*, 547 U.S. at 419; *see also San Diego v. Roe*, 543 U.S. 77, 82 (2004) ("The interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it."). Thus, in reviewing a claim such as Handy-Clay's, a court must seek a balance between promoting "the individual and societal interests that are served when employees speak as citizens on matters of public concern," and respecting "the needs of government employers attempting to perform their important public functions." *Garcetti*, 547 U.S. at 420 (citation omitted).

To properly balance these interests, the Supreme Court has established a three-part test for evaluating whether a public employee's speech is constitutionally protected. Under *Garcetti*, Handy-Clay must show (1) that her speech was made as a private citizen, rather than pursuant to her official duties; (2) that her speech involved a matter of public concern; and (3) that her interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in "promoting the efficiency of the public services it performs through its employees." *See id.* at 417-18 (citation and internal quotation marks omitted); *see also Westmoreland v. Sutherland*, 662 F.3d 714, 718-19 (6th Cir. 2011) (citing *Garcetti*, 547 U.S. at 417). We address these requirements in turn below.

**i. Speaking as a "Citizen"**

The Supreme Court recently clarified what it means for a public employee to speak as a "citizen" for First Amendment purposes in *Garcetti*. The Court observed that "when public employees make statements pursuant to their official duties, the employees

No. 11-5518           *Handy-Clay v. City of Memphis, et al.*                    Page 10

are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421. Justice Kennedy explained:

> Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

*Id.* at 421-22 (citation omitted). We thus look to the content and context of the plaintiff's speech to determine whether her statements were made pursuant merely to her professional duties. *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir.), *cert. denied*, 131 S.Ct. 643 (2010).

We have identified a number of factors to consider in this determination, including "the impetus for her speech, the setting of her speech, the speech's audience, and its general subject matter." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 546 (6th Cir. 2007). Relevant considerations include whether the statements were made to individuals "up the chain of command," *Fox*, 605 F.3d at 350 (quoting *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)), and whether the content of the speech is "nothing more than 'the quintessential employee beef: management has acted incompetently.'" *Haynes v. City of Circleville*, 474 F.3d 357, 365 (6th Cir. 2007) (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1998)). Factors that may be relevant but are not dispositive include whether the speech was made inside or outside of the workplace and whether it concerned the subject-matter of the speaker's employment. *See Garcetti*, 547 U.S. at 420 ("Employees in some cases may receive First Amendment protection for expressions made at work."); *id.* at 421 ("The First Amendment protects some expressions related to the speaker's job.").

The district court concluded that Handy-Clay's complaints were not made in her capacity as a private citizen. It separated her speech acts into five categories: complaints of interference by others with her efforts to respond to record requests; generalized complaints regarding "retaliation" and disparate treatment; specific allegations regarding denial of office space, the lack of policies and procedures, and misrepresentation of job

functions and positions; generalized complaints about abuse of city leave and pay policies; and specific complaints about abuse of city leave and pay policies by Morris himself. We characterize her speech acts in a slightly different way.

In our view, there are four categories of speech alleged by Handy-Clay. They include allegations about obstacles to the completion of her record-production duties; generalized allegations of disparate treatment and "workplace abuse" within the City Attorney's office; allegations related to violations of city policies related to absences, leave, and pay; and allegations of "retaliation" without further definition.[1]

We can dispose of the fourth category, Handy-Clay's "retaliation" complaints, because they state a legal conclusion with insufficient factual context to evaluate the plausibility of her claim. *See Twombly*, 550 U.S. at 555; *see also Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726-27 (6th Cir. 1996) (dismissing First Amendment claims where a complaint "states nothing more than the barest of conclusory allegations of unspecified retaliation"). For similar reasons, we can dispose of the second category, Handy-Clay's general allegations of "workplace abuse" or "lack of policies and procedures."

Next, it is clear under *Garcetti*, as well as our subsequent opinions applying *Garcetti*, that the first category of speech – complaints about obstacles interfering with her ability to produce records – is not protected. Handy-Clay admitted that her primary responsibilities included ensuring that record requests from the public were "routed to the appropriate records custodian and responded to in a timely manner," reviewing the documents released, and "preventing the disclosure of confidential information." Her

---

[1] In addition, there are a number of allegations that are irrelevant to our analysis. As recommended by *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 1583 (2012), we "disregard[ ] these irrelevant portions of the Amended Complaint, so that we may focus our judicial inquiry on the precise issues to be decided." For example, Handy-Clay alleged that she heard Porter and another city employee shredding documents in the office one evening. However, Handy-Clay does not say that she spoke to anyone about this incident, nor that Porter was aware of her presence that evening. Thus, this allegation does not constitute speech, nor is it relevant to any claims of retaliation. For similar reasons, we disregard her allegations about pushing for release of records from a non-city entity, receiving record requests regarding potential public corruption related to the move of the Greyhound bus station, Jefferson's instructions to gather records related to an FBI investigation and place them on his desk, her struggle to make contact with Morris regarding requests by the Memphis Commercial Appeal related to an FBI investigation, and the state of Handy-Clay's work when she was terminated.