complaints were directly related to her alleged job responsibilities and, thus, her speech was made in her capacity as an employee and not as a private citizen. *See Garcetti*, 547 U.S. at 421 (noting that disposition memo submitted by plaintiff, a deputy district attorney, was written pursuant to his official duty to advise his supervisor about how to proceed with pending cases); *Fox*, 605 F.3d at 349 (determining that teacher's complaints about class size owed their existence to her professional responsibilities); *Haynes*, 474 F.3d at 364-65 (holding that police officer's memorandum criticizing changes to canine program was written pursuant to official duties as canine handler).

The third category of speech concerns Handy-Clay's claim regarding violations of particular city policies. She alleged that "some employees of the City Attorney's office were absent, but were not reporting their absence on the city attorney's daily attendance log," and that she was "concerned that City funds were being improperly used." She began reporting her concerns as early as August 2009, to individuals both inside and outside of her department. The day before she was terminated, Handy-Clay submitted open-records requests asking for "documents regarding vacation, sick and bonus time, time sheets, docked pay, personnel files, and payroll check requests for City Attorney's office employees."

The district court determined that these complaints were also made pursuant to Handy-Clay's official duties. The district judge reasoned that Handy-Clay's allegations about abusive pay policies were motivated by her personal concern that other employees in the City Attorney's office were receiving preferential treatment and advantages that she had not received, and that this discrimination was in retaliation for her *other* speech acts. The court concluded that her speech on this topic was only a reflection of her "private interests as Public Records Coordinator and an employee of the City Attorney's Office, not as a concerned citizen."

We conclude that this interpretation does not read the complaint in the light most favorable to Handy-Clay, as the district court was required to do. Handy-Clay alleged that she was concerned with the improper use of city funds, and she spoke about her concerns to a number of individuals both inside and outside her department. She was not

asked to investigate the alleged misconduct or to give her opinion on any violations. This fact distinguishes her case from *Weisbarth*, in which a park ranger made critical comments about her department's "morale and performance issues" but made the comments only in response to a paid consultant's queries, at the behest of her employer. 499 F.3d at 543, 546. Like the plaintiff in *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752 (6th Cir. 2010), Handy-Clay's comments were "extraordinary rather than everyday communication." *Id.* at 768 (determining that court administrator's complaints about judge's religious references was not part of her official duties). In addition, we note that her conversations with individuals outside her department were clearly not part of her official duties as public records coordinator. For example, she spoke to an individual in the city payroll department, a human resources employee, and a city councilman. These facts, too, distinguish her case from *Fox* and *Haynes*, because their complaints were made only to their immediate supervisors. *Fox*, 605 F.3d at 350 (quoting the Fifth Circuit's observation that "when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." (quoting *Davis*, 518 F.3d at 313)); *Haynes*, 474 F.3d at 364 ("The fact that Haynes communicated solely to his superior also indicates that he was speaking 'in [his] capacity as a public employee contributing to the formation and execution of official policy,' not as a member of the public . . . ." (alteration in original) (quoting *Mills v. City of Evansville*, 452 F.3d 646, 648 (7th Cir. 2006))).

Hence, our review of the complaint, taking the allegations as true, leaves us with the firm impression that Handy-Clay has alleged sufficient facts to justify an inference that she spoke on these issues, both to her superiors and outside her chain of command, as a concerned citizen addressing an issue of public corruption. We find nothing in the complaint that suggests that the duties of her position as public records coordinator included reporting on government corruption and mismanagement of public funds.

### ii. On a Matter of Public Concern

Next we turn to the question of whether Handy-Clay's speech touched on matters of public concern, a decision that the district court did not address, having found that she

had not spoken as a private citizen. Whether or not a plaintiff's speech touches on a matter of public concern is a question of law. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008). In making this determination, we look to the "content, form, and context of a given statement, as revealed by the whole record." *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003) (quoting *Connick*, 461 U.S. at 147-48).

Speech touching on public concern includes speech on "any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146; *Westmoreland*, 662 F.3d at 718. We have noted that "[t]he mere fact that public monies and government efficiency are related to the subject of a public employee's speech does not, by itself, qualify that speech as being addressed to a matter of public concern." *Barnes*, 848 F.2d at 734. However, the Supreme Court, in citing examples of speech that would involve matters of public concern, has specifically identified statements seeking to "bring to light actual or potential wrongdoing or breach of public trust." *Connick*, 461 U.S. at 148. The Court reiterated this proposition recently in *Garcetti*, noting that "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance." 547 U.S. at 425. In the wake of *Garcetti*, we likewise have determined that "statements exposing possible corruption . . . are exactly the type of statements that demand strong First Amendment protections." *See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) (citations omitted); *see also Whitney v. City of Milan*, 677 F.3d 292, 297 (6th Cir. 2012) ("Allegations of public corruption and discrimination are, therefore, inherently of public concern."). In fact, we have gone so far as to say that "public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law, when exposing graft and corruption, and when seeing that public funds are not purloined or wasted." *Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 576 (6th Cir. 1997) (alterations, citations, and internal quotation marks omitted).

The district court decided that Handy-Clay's "alleged complaints ha[d] the ring of internal office politics," a finding that, if supported by the facts in the complaint, would also support the district court's order of dismissal. However, in making this

determination the district court should have looked not at the motivation for speaking but at the content of the speech. *See Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 479-80 (6th Cir. 2006) (identifying "the pertinent question" as "not *why* the employee spoke, but *what* he said" (citations and internal quotation marks omitted)). As we observed in *Chappel*, "[T]he argument that an individual's *personal* motives for speaking may dispositively determine whether that individual's speech addresses a matter of *public* concern is plainly illogical and contrary to the broader purposes of the First Amendment." 131 F.3d at 574. In that case, Chappel, a part-time emergency medical technician, alleged that he was retaliated against because he criticized his employer for "mismanagement, corruption, and unethical behavior." *Id.* at 567. We observed:

> Even if we were to assume that Chappel's predominant motivation for speaking was securing a job for himself, we would not conclude that this motivation so dominated the substance of Chappel's speech that the "point" or "communicative purpose" of his speech was rendered merely a matter of personal concern. Chappel directly addressed matters that are rightly "near [the] zenith" of public concern—matters of public safety, and the gross mismanagement and misappropriation of public monies.

*Id.* at 578 (alteration in original). Handy-Clay has alleged very similar acts of misconduct, and the facts set out in her complaint support an inference that her communications were not made merely for personal reasons. *See Wooley v. Madison Cnty.*, 209 F. Supp. 2d 836, 843 (W.D. Tenn. 2002) (noting that speech regarding pay practices of county employees was matter of public concern, explaining that "complaints that Bond was granting employees more paid leave than they had earned went beyond internal office politics, as these allegations of corruption involved the mismanagement of public monies").

In addition, we noted in *Chappel* that "[c]onstitutional protection for speech on matters of public concern is not premised on the communication of that speech to the public" and held that Chappel's private conversations on these issues with members of the fire department board were conversations on matters of public concern. 131 F.3d at 579. Similarly, although Handy-Clay did not present her concerns to the public at large,

No. 11-5518          *Handy-Clay v. City of Memphis, et al.*          Page 16

her communications to individuals outside her department, including a city councilman, were related to issues of public concern even though expressed in private discourse. We thus conclude that Handy-Clay's communications alleging corruption and mismanagement by public employees must be construed at this stage of the litigation as speech on a matter of public concern.

### iii. Balancing Under *Pickering*

Once it is determined that an employee's speech was made as a citizen on a matter of public concern, *Pickering v. Board of Education*, 391 U.S. 563 (1968), requires a court to balance the interests of the public employee "as a citizen, in commenting upon matters of public concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568; *accord Whitney*, 677 F.3d at 298 (citation omitted). At this stage, the burden is on the defendant to proffer legitimate grounds for the allegedly retaliatory action at issue. *Hughes*, 542 F.3d at 180 (citing *Rodgers*, 344 F.3d at 601).

Again, we review this claim on a motion to dismiss and, thus, must accept Handy-Clay's factual allegations as true. She alleged that her speech exposing public corruption within the office was "a substantial or motivating factor" in the decision to discharge her. This allegation is supported by the close temporal proximity between Handy-Clay's e-mails informing her superiors about her requests for various records and her termination. Generally, if a plaintiff alleges that a "First Amendment violation was a substantial or motivating factor in the termination, the employer may present evidence the employee would have been terminated in the absence of protected conduct." *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995). However, the defendants in this case cannot support a claim that Handy-Clay's termination was for non-retaliatory reasons without "some factual discovery." *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 231 (6th Cir. 2005); *see also Perry v. McGinnis*, 209 F.3d 597, 607 (6th Cir. 2000) ("In many cases, due to inadequate factual development, the . . . balancing test cannot be performed on a 12(b)(6) motion."

(citation and internal quotation marks omitted)). In any event, Handy-Clay's allegations under the First Amendment are, at this point, sufficient to survive a motion to dismiss.

### b. Adverse Action

Handy-Clay has pleaded factual allegations sufficient to establish that she engaged in constitutionally-protected conduct when she spoke to various public officials regarding allegations of misconduct and corruption in the City Attorney's office. Next, we must evaluate whether Handy-Clay has sufficiently alleged that an adverse action was taken against her "that would deter a person of ordinary firmness from continuing to engage in that conduct." *Mezibov*, 411 F.3d at 717 (citation omitted). The term "adverse action" has traditionally referred to "actions such as 'discharge, demotions, refusal to [h]ire, nonrenewal of contracts, and failure to promote.'" *Fritz*, 592 F.3d at 724 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (*en banc*)). We have held that "[l]osing one's job and accompanying benefits is certainly severe enough to deter a person of ordinary firmness from speaking at public meetings." *Paige v. Coyner*, 614 F.3d 273, 281 (6th Cir. 2010); *see also See*, 502 F.3d at 494 (holding that discharge is "undeniably . . . an adverse action that would chill the free speech rights of an ordinary person"). Given this precedent, it is clear that Handy-Clay's termination constituted an adverse action.

### c. Substantial or Motivating Factor

As a final requirement, Handy-Clay must demonstrate that her speech was "a substantial or motivating factor in the employer's decision to take the adverse employment action against [her]." *Hughes*, 542 F.3d at 181 (citing *Rodgers*, 344 F.3d at 596). We have interpreted a motivating factor to mean "one without which the action being challenged simply would not have been taken." *Holzemer v. City of Memphis*, 621 F.3d 512, 525 (6th Cir. 2010) (citing *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)). Moreover, as previously noted, "[a] defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury." *Paige*, 614 F.3d at 282; *see also Evans-Marshall*, 428 F.3d at 232 ("[O]ur inquiry is . . . limited by the early

stage of this case."). Nevertheless, we have identified two factors that support our determination that Handy-Clay has adequately alleged that her speech was a substantial factor in the decision to terminate her public employment, at least for purposes of Rule 12(b)(6).

First, there is enough evidence in the record to support the proposition that the defendants knew of Handy-Clay's protected speech. There is no question that Morris knew about her complaints, because she spoke directly to him multiple times and copied him on her e-mail regarding her final record requests. Although Handy-Clay did not assert that she directly addressed Porter about misconduct and corruption in the City Attorney's office, copies of the record requests attached to the complaint reveal that Porter was indeed included on that e-mail. Handy-Clay also does not allege that she contacted Wharton directly with her concerns, but the sheer number of complaints Handy-Clay made over a period of years to various members of the Mayor's staff certainly supports an inference that Wharton was aware that Handy-Clay was speaking out on these issues. And while it might be difficult "for a plaintiff to have smoking gun evidence that a defendant knew of her protected speech or for a defendant to admit such knowledge," *Valentino v. Vill. of S. Chicago Hts.*, 575 F.3d 664, 672 (7th Cir. 2009), given the entirety of the complaint, we conclude that Handy-Clay alleged sufficient facts to support an inference that the defendants were aware of her speech.

Second, we note that the chronology of events supports an inference of causation, particularly because Handy-Clay was terminated the day after she made her own records requests. *See Holzemer*, 621 F.3d at 525-26 (holding that chronology of events supported inferences about what factors motivated retaliation). In *Paige*, we noted that temporal proximity between the protected conduct and the adverse action creates an inference of retaliatory motive; there, the time between the conduct and the action was one week. 614 F.3d at 283. Here, it was less than one day. This gives rise to a strong inference that Handy-Clay's speech to Morris and her e-mails regarding the requests on August 25 and August 26 were motivating factors in her termination.

Because Handy-Clay has alleged sufficient facts to support her claim that she engaged in constitutionally protected conduct that motivated her supervisors to engage in an adverse action against her, the complaint is adequate to survive a Rule 12(b)(6) motion to dismiss for failure to state the plaintiff's First Amendment retaliation claim.

## 2. Fourteenth Amendment Claim: Due Process

Handy-Clay's complaint also alleged that she was deprived of her rights under the Fourteenth Amendment's provision that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. CONST. amend. XIV, § 1. We separate claims alleging deprivation of due process into two categories: violations of procedural due process and violations of substantive due process. *Midkiff v. Adams Cnty. Reg'l. Water Dist.*, 409 F.3d 758, 762 (6th Cir. 2005) (citation omitted).

Procedural due process claims are concerned not with the deprivation of a constitutionally protected interest in "life, liberty, or property," but deprivation of those interests without due process of law. *Eidson*, 510 F.3d at 635 (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). When reviewing a procedural due process claim, we must determine whether a protected liberty or property right is at stake and, if so, what process is due. *Midkiff*, 409 F.3d at 762-63 (citing *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002)). Substantive due process claims, in comparison, "serve[] as a vehicle to limit various aspects of potentially oppressive government action." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). They often fall into one of two categories – claims that an individual has been deprived of a particular constitutional guarantee, or claims that the government has acted in a way that "shock[s] the conscience." *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1992) (citations omitted). "Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." *Id.* (citations omitted).

Handy-Clay's complaint does not specify what type of Fourteenth Amendment violation occurred, other than to allege that she had a liberty interest in continued

employment that was taken from her without due process and in a manner that shocks the conscience. But, she made no claim that she had been hired based on anything other than an employment-at-will agreement or that she was promised termination only for cause. Under state law, which defines what constitutes a property interest, *Pucci*, 628 F.3d at 765, an at-will employee "is subject to dismissal at any time and without cause" and, thus, has no protectable interest in her continued employment. *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997); *see also Harney v. Meadowbrook Nursing Ctr.*, 784 S.W.2d 921, 922 (Tenn. 1990) ("The long standing rule in this State is that an employee-at-will may be discharged without breach of contract for good cause, bad cause or no cause at all . . . ."). It follows that Handy-Clay has failed to set out facts that would constitute an actionable procedural due process violation.

Nor do we find that the plaintiff has set out sufficient facts to constitute a substantive due process violation, of which there may two types. As previously noted, *Thaddeus-X* precludes reliance on substantive due process standards when evaluating claims covered by explicit constitutional protections. 175 F.3d at 387 (discussing the Supreme Court's instruction that when a specific amendment "provides an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims" (citing *Albright v Oliver*, 510 U.S. 266, 273 (1994))). Therefore, "[a]ny claim for a violation of [a] substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim." *Brandenburg v. Hous. Auth.*, 253 F.3d 891, 900 (6th Cir. 2001) (citation omitted). We have adhered to this distinction. *See, e.g., Bell v. Johnson*, 308 F.3d 594, 610-12 (6th Cir. 2002) (applying legal standards from First Amendment retaliation case to a § 1983 claim, rather than a fundamental rights analysis). Thus, to the extent that Handy-Clay alleges that she has a substantive due process claim related to her free speech claim, her claim is foreclosed by controlling precedent.

Handy-Clay could succeed in alleging a substantive due process claim only by setting out conduct that, if true, would "shock the conscience." When the conduct in

question has been taken by an executive officer, the action violates substantive due process only if it can be characterized as "arbitrary, or conscience shocking, in a constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (citation and internal quotation marks omitted). Moreover, this characterization applies to "only the most egregious official conduct," *id.* at 846 (citation omitted), conduct that is "so 'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency." *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)).

The thrust of Handy-Clay's claim is that her supervisors grossly abused their authority by terminating her after her repeated complaints about malfeasance and corruption. As the Second Circuit observed in a similar case:

> What is allegedly shocking about what the defendants' did [sic] is . . . their intent to violate plaintiff's fundamental First Amendment rights . . . . In other words, what would serve to raise defendant's actions beyond the wrongful to the unconscionable and shocking are facts which, if proven, would constitute, in themselves, [a] specific constitutional violation[ ] . . . . Because we believe that, as a matter of law, defendants' purported actions would not – but for the allegations of First Amendment violations . . . – be sufficiently shocking to state substantive due process claims, we conclude that plaintiff's substantive due process claim is either subsumed in her more particularized allegations, or must fail.

*Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005). Because there is likewise "an enumerated constitutional right . . . available as a source of protection" available in Handy-Clay's case, we conclude that she has failed to allege sufficient facts to support a substantive due process claim. *Thaddeus-X*, 175 F.3d at 387 (citing *Graham v. Connor*, 490 U.S. 386, 392-93 (1989)).

### III. CONCLUSION

As we recently observed in a case involving a dismissal under Rule 12(b)(6), "The district court's construction of Fed R. Civ. P. 12(b)(6) – crediting the defendant's, rather than the plaintiff's version of facts – unduly raises the pleading standard beyond the heightened level of *Iqbal* and *Twombly*, forcing the plaintiff's well-pleaded facts to

be not only plausible, but persuasive. That is not the appropriate burden at this stage of the litigation." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012). Similarly, the district court in this case did not uniformly construe the complaint in the light most favorable to the plaintiff in denying her First Amendment claim. Our review indicates that the facts alleged in the complaint and the reasonable inferences from those facts, when construed in Handy-Clay's favor, support her retaliation claim in the face of a motion to dismiss. We therefore REVERSE that portion of the district court's judgment dismissing that claim, AFFIRM the remainder of the judgment, and REMAND the case to the district court for further proceedings.