### UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: September 08, 2014

Ms. Linda K. Garner
Lady Lawyers
22 N. Front Street
Suite 140
Memphis, TN 38105

         Re:  Case No. 13-6466, *Jesse Ortiz v. Hershey Company*
              Originating Case No. : 2:11-cv-03123

Dear Counsel,

    The Court issued the enclosed (Order/Opinion) today in this case.

                            Sincerely yours,

                            s/Roy G. Ford for Ms. Amy Gigliotti
                            Case Manager
                            Direct Dial No. 513-564-7012

cc:  Mr. Thomas M. Gould
      Mr. Jonathan Cromwell Hancock
      Mr. John Richard Martin

Enclosure

Mandate to issue

<u>**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**</u>
File Name: 14a0708n.06

Case No. 13-6466

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 08, 2014
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JESSE ORTIZ,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>HERSHEY COMPANY,<br><br>    Defendant-Appellee. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |

BEFORE: SILER and KETHLEDGE, Circuit Judges; WATSON, District Judge.[*]

    SILER, Circuit Judge. Jesse Ortiz ("Ortiz"), a former press operator at the Hershey Company ("Hershey") manufacturing plant in Tennessee, alleges he was discriminated against in the terms and conditions of his employment, ultimately resulting in his termination. The district court granted summary judgment to Hershey. We **AFFIRM**.

I.

A.     **Ortiz's Employment at Hershey**

    Ortiz began working at the Hershey plant in 2001. Throughout the course of his employment, he worked primarily as a day-shift press operator in the mints department. Hershey

---

[*] The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

Case No. 13-6466
*Ortiz v. Hershey Co.*

employed three day-shift press operators, including Ortiz, and one back-up press operator. Ortiz and Angie Salas were Hispanic-American, Wes Garlock was Caucasian, and Gary Johnson—the back-up press operator—was African-American.

When Ortiz started in his position, the press operators rotated among four production lines. Later, however, the mints supervisor assigned each press operator to a particular line on a full-time basis. Ortiz was assigned to the D-Line and never bid or sought to be assigned to a plant position other than first shift D-line operator.

In 2009, there were four press machines on each line, and the D-line also had an "add-on" line, which fed a different type of mint to the plant's packing department. Mints operators were responsible for making a quality tablet to deliver to the packaging area. The operators' tasks included performing metal detector checks, weight checks, bulking off extra tablets, and moving barrels.

Ortiz's job consisted of running four presses as well as the machine for the "add-on" line, which required an hourly metal check, in addition to the checks required for the presses. Ortiz was responsible for mixing candy, rolling full 335-pound barrels to the chute for pouring into the holding tank, and doing the appropriate dating and labeling. He was also required to continue the hourly metal checks for his four presses and the half-hour checks for weight, hardness, and size.

**B.    New Supervisor**

In 2007, Phyllis Grandberry transferred to the mints department, where she became the first shift supervisor and Ortiz's direct boss. Before her arrival, policies in the mints department had not been enforced as consistently as Hershey desired. Grandberry enforced policies more strictly and, as a result, between 2007 and 2010, she issued seventy-seven disciplinary write-ups

Case 2:11-cv-03123-STA-tmp   Document 92   Filed 09/08/14   Page 4 of 9   PageID 931
Case: 13-6466   Document: 35-2   Filed: 09/08/2014   Page: 3   (4 of 9)

Case No. 13-6466
*Ortiz v. Hershey Co.*

to her mints supervisees. Of those write-ups, thirteen percent were issued to Hispanic/Mexican-American employees, eighty-one percent were issued to African-American employees, and six percent were issued to Caucasian employees. These percentages are consistent with the demographics of the mints employees under Grandberry's supervision.

C. **Ortiz's Violations and Last Chance Agreement**

Ortiz received several disciplinary warnings during his tenure at Hershey, including a 2007 written warning for failing to perform his hourly metal detector checks, a January 2009 written warning for mislabeling four drums of mints that were shipped to a customer, a May 2009 written warning for failing to empty the candy dispense pan used to collect the metal detector from his production line, and a March 2010 written warning for mis-identifying the flavor of mints for which he had run tablets during his shift. For the 2007 violation, Hershey could have given Ortiz a one-day suspension but chose not to. Additionally, the March 2010 violation was Ortiz's fourth, and although plant policy stated that he should receive a one-day suspension without pay, Grandberry decided not to suspend Ortiz for the infraction.

In January 2008, Ortiz had an altercation with Claude Taylor, a mechanic. Taylor was trying to fix equipment in a tight area of the packaging department when he accidentally elbowed Ortiz, who had gone to the packaging department to visit his wife. Ortiz reacted by asking Taylor if he could say "excuse me," to which Taylor responded, "well, excuse me." Ortiz told Taylor that next time, Ortiz's "elbow might be in [Taylor's] face." Taylor reported to his supervisor that he deemed Ortiz's response to be a threat. Taylor's supervisor reported this to Wanda McKinnon, the human resources manager, who claims to have spoken with both Taylor and Ortiz during her investigation. Ortiz claims that McKinnon never spoke with him.

Case No. 13-6466
*Ortiz v. Hershey Co.*

Hershey has a zero-tolerance policy for workplace violence, such that an employee found to have engaged in any sort of workplace violence is subject to "automatic termination" of his employment. Based on Ortiz's admission that he had told Taylor he might elbow him in the face and Taylor's belief that Ortiz was threatening him, McKinnon suspended Ortiz until she could speak with Grandberry, the plant manager, and the manufacturing manager about the situation. Ortiz ultimately received a two-week suspension without pay.

Although Ortiz threatened Taylor, management determined that Ortiz's termination was not required under the zero-tolerance policy. On January 31, 2008, Hershey gave Ortiz a last chance agreement ("LCA") because of his incident with Taylor. An LCA is a disciplinary tool Hershey uses to provide employees who otherwise are eligible for termination with another opportunity "to correct their behavior" and "continue their employment." Ortiz's LCA said that if he was "found in violation of any company policy, including employee to employee relationships, threatening behavior or any type of workplace violence, attendance, GMP violations, work standards, quality, safety" or other policy listed in the employee handbook, his employment would be subject to "immediate[] termination."

In August 2010, while Ortiz was working his normal first shift position, his metal wand traveled into packaging, where it became lodged in one of the packaging machine carousels. Because Ortiz's lost wand became lodged in a packaging machine, Hershey had to shut down the D-line, the candy had to be drained, and Grandberry had to ensure Ortiz's wand had not damaged any equipment. Plant procedure required an operator to locate a wand immediately, and if unable to do so, the operator was to notify his supervisor immediately. Ortiz did not inform his supervisor about his lost wand. Grandberry said that no other operator under her supervision had ever lost a wand that traveled to packaging without notifying her about it.

Case No. 13-6466
*Ortiz v. Hershey Co.*

On August 20, 2010, two days after his metal contamination violation, Ortiz committed another quality control policy violation by failing to report plastic on his line and failing to stop his line, as was his responsibility. Based on these contamination incidents, as well as Ortiz's previous violations and his LCA status, Hershey determined that further investigation was warranted before it reached a decision about Ortiz's continued employment. Ortiz was suspended without pay during the investigation.

After investigating Ortiz's two August 2010 incidents, McKinnon met with the plant manager to review Ortiz's employment file, and they reached the following conclusions: (1) Ortiz had accumulated six quality control violations since 2007, including two violations for failure to follow protocol during hourly metal detector checks; (2) Ortiz had been trained on the quality control checks and was aware of his job responsibilities; (3) Ortiz was on an LCA at the time of his August 2010 violations; and (4) Ortiz had been warned and was on notice that any post-LCA violations of plant policy would result in discipline, up to and including termination. Based on these conclusions, Hershey terminated Ortiz's employment effective August 30, 2010.

### D. Procedural History

Ortiz filed a Title VII suit against Hershey alleging discrimination based on his race and gender. The district court granted Hershey's motion for summary judgment on all claims. With respect to Ortiz's gender claims, the court found that Ortiz had not responded to Hershey's defense arguments.[1] Ortiz offered no direct evidence on racial discrimination, so the court applied the test for claims limited to circumstantial evidence and found that Ortiz could not establish a prima facie case because he could not show that a similarly-situated employee who had engaged in comparable conduct received more favorable disciplinary treatment.

---

[1] Ortiz did not appeal the district court's gender ruling.

Case No. 13-6466
*Ortiz v. Hershey Co.*

## II.

"This court reviews a district court's grant of summary judgment de novo." *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012).

## III.

When a plaintiff, like Ortiz, presents only circumstantial evidence, the *McDonnell Douglas* burden-shifting analysis applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this analysis, the plaintiff bears the initial burden to establish his prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he was subject to an adverse employment decision, (3) he was qualified for the position, and (4) he was treated differently than similarly-situated non-protected employees. *Dodd v. Donahoe*, 715 F.3d 151, 156 (6th Cir. 2013).

After a plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action. *Whitfield v. Tenn.*, 639 F.3d 253, 259 (6th Cir. 2011). If the defendant does so, the burden shifts back to the plaintiff to prove that the defendant's explanation is pretextual. *Id.*

## IV.

In this case, there is no dispute that Ortiz, as a Hispanic-American, is a member of a protected group. It is also not disputed that Ortiz committed multiple quality control violations while on the job. Ortiz claims that those violations were the result of his being discriminatorily assigned greater responsibilities than other workers—responsibilities that exposed him to a greater potential for error. While the district court accurately noted that an "alteration of job responsibilities" does not generally constitute a materially adverse employment action, *see Spees*

Case 2:11-cv-03123-STA-tmp   Document 92   Filed 09/08/14   Page 8 of 9   PageID 935
Case: 13-6466   Document: 35-2   Filed: 09/08/2014   Page: 7   (8 of 9)

Case No. 13-6466
*Ortiz v. Hershey Co.*

*v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010), we need not reach this question because Ortiz's workload discrimination claim is time barred.

Ortiz was assigned to the D-line on a permanent basis in 2002 or 2003. He concedes that Hershey's decision to stop rotating employees among the production lines was made for business reasons, not discrimination against him. The addition of the *Ice Breaker* line in 2007 was a discreet act by Hershey. Even if this was arguably a materially adverse employment action,[2] Ortiz failed to file a complaint until more than three years later—well outside the statute of limitations period. *See* 42 U.S.C. § 2000e-5(e)(1). Furthermore, the same result holds even if Hershey's decision to assign Ortiz a greater workload is related to the circumstances leading to his termination, for which he filed a timely complaint. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

Ortiz's claim relating to his termination fails because he did not offer evidence that similarly-situated employees were treated differently than he was. Ortiz must produce evidence that "at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). In the disciplinary context, we have held that to be found similarly situated, a plaintiff and his proposed comparator must have engaged in acts of "comparable seriousness." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 916–17 (6th Cir. 2013). "To make this assessment, a court must look to certain factors, such as whether the individuals have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such

---

[2] Notably, Ortiz acknowledges that he never attempted to bid into a different line with fewer responsibilities—an option that was available to him.

Case 2:11-cv-03123-STA-tmp   Document 92   Filed 09/08/14   Page 9 of 9   PageID 936
Case: 13-6466   Document: 35-2   Filed: 09/08/2014   Page: 8   (9 of 9)

Case No. 13-6466
*Ortiz v. Hershey Co.*

differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (internal quotation marks and citations omitted).

In this case, the press operators with whom Ortiz seeks to compare himself, Garlock and Johnson, were not similarly situated. Unlike Ortiz, neither of them was working under an LCA and neither had a comparable record of quality control violations. Moreover, Ortiz omits from his analysis press operator Salas. Even if Garlock and Johnson benefited from their reduced workload by committing fewer quality control mistakes, so too did Salas, and she is a member of the same protected group as Ortiz. When Salas is included in the mix, the record here does not give rise to any reasonable inference of racially disparate treatment by Hershey. The district court did not err by rejecting Garlock and Johnson as similarly-situated comparators to Ortiz.

Ortiz raises two additional issues on appeal: (1) whether the district court erred in analyzing the alleged response by a Hershey supervisor to a fight between other employees at the plant, and (2) whether the district court properly viewed the evidence of the altercation involving Taylor in a light most favor to Ortiz. We need not reach these issues, however, because an alternate finding on either would not enable Ortiz to establish a prima facie case of racial discrimination.[3]

**AFFIRMED.**

---

[3] An isolated incident of non-intervention by Grandberry does not create a material fact dispute with respect to Ortiz's discrimination claims, and the altercation with Taylor led to Ortiz's LCA, the imposition of which was never raised as an adverse employment action.